No. 344

First Circuit

WILCOX ET AL. v. L. R. & N. CO. and BROCATO, Consolidated

(October 1, 1928. Opinion and Decree.)
(December 4, 1928. Rehearing Refused.)
(January 28, 1929. Writs of Certiorari and Review denied by Supreme Court.)

George Piazza, of New Orleans, and H. Payne Breazeale, of Baton Rouge, attorneys for plaintiff, appellants.

Laycock, Barron and Laycock, of Baton Rouge, and Wise, Randolph, Rendall and Freyer, of Shreveport, attorneys for defendants, appellees.

ELLIOTT, J. Stanley, Edwin and William Wilcox, brothers of Alvin Wilcox, brought suit against Louisiana Railway and Navigation Company for $20,277.50 damages on account of his death. The other plaintiff, Mrs. Irene Kern Brocato, brought suit against the same defendant for $15,100.00 damages on account of injuries received by her in the same accident that caused the death of Alvin Wilcox.

The plaintiffs, Wilcox, allege that on or about the 21st of May, 1928, their brother Alvin, riding in an automobile operated by J. Vicknair, at about 4:15 a. m., and while driving on Convention Street in the City of Baton Rouge, on their way out of town, was run over and killed by a switch engine belonging to and operated by Louisiana Railway and Navigation Company. That the automobile was being driven at not more than 10 miles an hour and when it entered on the crossing where defendant's railroad crosses Convention Street, it was struck by defendant's locomotive, without notice or warning of any kind and their brother killed in the collision. That the accident occurred solely and only through the fault and negligence of the defendant company, its agents and employees, in the operation of said engine. That it was dark at the time and there was no warning to motorists, of a railroad crossing. No gate to prevent vehicles from crossing when an engine was about to do so. No signal bell to warn of an approaching train; that if any bell was there it was not ringing. That no whistle was blown by the engine on its approach. That no flagman was there, nor precaution of any kind to avert accidents; no headlights on the engine. That if the engine carried headlights they were not burning, etc. That defendant's engine was traveling between 20 and 25 miles an hour at the time, which was dangerous, reckless and grossly negligent at that time and place, and was moreover in violation of the City Ordinance on the subject.

That their brother was thrown out of the automobile by the impact of the collision, on top of the steam chest of defendant's engine, and remained in that position until the engine stopped; upon which he fell to the ground with his body across defendant's rails, in between the little wheel and the driving wheel of the engine. That defendant's agent and employees then backed the engine over his body while it was in this position, and in doing so, the small wheel ran over him and killed him. That if the engine had remained at a stand still after the collision, and had not backed over him their brother would not have received the wounds that caused his death.

They further allege that their brother was riding in said automobile as the invited guest of said Vicknair, and had no authority over the driver thereof. That at the time of the accident and immediately prior thereto he was asleep on the back seat of the automobile, and had no knowledge of what was taking place.

Mrs. Brocato charges in her petition the same acts of negligence against the defendant, except that she received severe personal injuries. She alleges that as a result, she was confined in Our Lady of the Lake Sanitarium at Baton Rouge for three days, suffering physical pain and

mental anguish. That she was then moved to New Orleans, where her suffering continued for about five months.

The defense is the same in both cases. The charges of negligence are denied. The crossing in question is alleged to have been amply protected at the time. That it was well lighted. That the engine approached the crossing slowly with the bell ringing and headlights burning, and the occupants of the automobile should have known of its approach. That the driver of the automobile came to the crossing at a rapid and dangerous speed, without stopping, looking and listening for the approach of trains, and ran into the side of defendant's engine as it was making the crossing. That no opportunity existed of avoiding said accident.

The defendant further alleges in both cases, that the occupants of said automobile were engaged in a joint undertaking, to the knowledge of each, and in furtherance thereof were in reckless flight. That said automobile was being jointly used by said occupants in furtherance of their said undertaking.

The answers in both cases are practically the same.

Defendant denies that it was guilty of any fault of negligence; but alleges in the alternative, that if it be found to have been at any fault, then, that the said Alvin Wilcox and Mrs. Brocato were guilty of contributory fault and negligence.

The two cases were consolidated and tried together as one case.

The District Judge rendered only one judgment in both cases. Only one appeal was taken, but it brings up both cases. We therefore act on both cases at the same time and in one opinion.

A large amount of testimony was taken; all of which, on important facts, is conflicting.

The witness for the plaintiff, Nester J. Vicknair, who was driving the automobile, and Mrs. Brocato, the plaintiff, one of the occupants of the car, testify that the automobile was not going faster than about fifteen miles an hour. That they did not see the railroad crossing, did not know there was one there. That it was dark and the crossing was poorly lighted. That they were unable to see the locomotive until about the time it struck their automobile and had no opportunity to avoid it. That the engine struck them with such force that Alvin Wilcox was pitched out of it on top of the steam chest of the engine, from which position he afterwards fell, about the time the engine was stopped, and in falling, dropped between the pony wheels under the engine. That the engine backed over him, killing him.

The train crew testify that the automobile running at fast speed, struck the pilot of the locomotive with such force, that Alvin Wilcox, sitting in the back seat of the automobile asleep, was projected forward out of it and across the rails in between the forward wheels of the locomotive; and that the wheels passed over him before the engine could be stopped.

They say that if he had fallen on top of the steam chest that when he fell from it, he would have fallen outside of the rails and would not have been run over. The evidence of the defense witness on this subject seems the most trustworthy. If the automobile, running fast, had struck a slow moving locomotive the occupants of the car would most likely have been pitched forward out of it toward the locomotive, as actually took place. On the other hand, if a faster moving locomotive had struck

a slow moving automobile, the occupants of the automobile would likely have been pushed ahead on the railroad with the automobile, or would have been pushed to one side, instead of being projected towards the locomotive.

The train crew denies that the locomotive was backed after it was brought to a stop, and all testify that Alvin Wilcox was bound to have been run over before the engine was stopped. We do not find that the facts established that the locomotive was backed over the decedent after it had been stopped.

Mrs. Brocato testifies that she was rendered unconscious by the collision and did not remember signing, nor hearing read to her a written statement produced against her, and which, it is said, she signed at the hospital two or three hours after the accident. The train crew denies that she was unconscious when she came out of the wreck, because she talked to them before going to the hospital; and their testimony on the subject is corroborated by the fact that when she arrived at the hospital she was not unconscious, but able to talk and did talk, giving an intelligent account of the affair. It was while at the hospital and only a short time after the occurrence that the statement was written, which was produced against her. She admits that she signed the statement, but declares that she could not remember dictating it, nor that it was read to her. The statement was written by one of defendant's agents, but it contains statements that could hardly have been known to this agent. He must have received them from her at the time they were written, and the statements made indicate a clear mind on her part.

There were two ladies in the car, the party plaintiff and a friend. Her friend was not produced as a witness. Mrs. Brocato says that her friend and herself were on their way from Donaldsonville to Hammond to pick strawberries. That is possible, only so however, because these ladies were probably not posted as to the berry season. As a matter of fact, the strawberry season is generally over by the date of the accident. It is seldom that any berries are picked as late as the date of the occurrence.

The contention of the defendant is in harmony with the conduct of the occupants of this automobile. The two ladies in question were both young married women, living in New Orleans; but were not at the time, living with their husbands, and their husbands were not with them on this trip. Mr. Vicknair testifies, in one place, that the two ladies asked him to take them to Hammond; in another, he was very sure that Alvin Wilcox was his guest and had no control over the car.

The conclusion at which we have arrived makes this question unimportant.

The defendant's train crew testifies that the switch engine in question was not running faster than eight or ten miles an hour. That its headlight at the time was burning brightly. That two men, employees of the railroad, were standing at the time on the foot-board at the head of the engine; each with a lighted lantern in his hand. That the engine bell was ringing, also a bell at the crossing, and that there were red and white lights at the crossing, and a large arc light 12 or 14 feet in the air above it. That the crossing was, in addition, plain to be seen by two large cross arms and street lights burning nearby. That the headlights of the automobile were also burning, and that with all these lights nobody could fail to see the railroad and the warning signs, if they had been looking ahead.

There is some reliable evidence that the headlight on the locomotive was not as bright as headlights are on some locomotives, and that the crossing bell could not be heard by parties driving an automobile unless it was attentively listened for. But all the facts taken into account, we are satisfied that the crossing was lit up and could have been plainly seen by the driver of the automobile, and the other parties in it, if they had been looking ahead. The train crew testify that they saw the automobile coming for more than 150 feet before it reached the crossing. That it was' coming fast. The witnesses differ in their estimate of the speed of the automobile, but all agree that it was running considerably faster than the engine, and that the engine was in plain view for at least 50 feet before it reached the crossing. It was also shown that the engine reached the crossing and was on it before the automobile reached it. The engineer and fireman and two men standing on the footboard all claim to have seen the automobile coming, and that they expected it to stop as it came up to the railroad, but it did not. It came straight on without slacking speed, made a slight swerve to the right just before it reached the locomotive, but was unable to swerve far enough and struck and wrecked itself against the pilot on the engine.

The evidence shows that the defendant has complied with the requirements of the Louisiana Public Service Commission at this crossing and the bulk and preponderance of the testimony is to the effect, that the railroad company was not at any fault, nor guilty of any negligence whatever, and is in no way responsible for this accident. Such being the case, and our conclusion, no useful purpose would be served by further discussing the testimony and the issues urged in the pleadings. As the defendant was in no way to blame it cannot be held responsible. The District Judge rejected plaintiffs' demands. It is our opinion that his judgment was correct.

Plaintiffs and appellants to pay the cost in both courts.